

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| HAROLD HOLTSHOUSER and KATHY HOLTSHOUSER, | CV 11-114-BLG-RFC |
| Plaintiffs, | |
| vs. | **ORDER** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Defendant has filed a Motion for Partial Summary Judgment, arguing that Plaintiff's expert witnesses are not qualified to testify as to the standard of care. Plaintiff opposes. The matter is fully briefed and the Court is prepared to rule.

## BACKGROUND

Plaintiff was born on February 9, 1922. He is a veteran and has received medical care and treatment through the Department of Veterans' Affairs (VA).

During the time period of 2001 through 2008, Plaintiff's primary care provider was nurse practitioner Shauna Kersten at the VA community outpatient

clinic in Bozeman. Plaintiff suffered from a number of chronic medical conditions and was taking up to 20 different medications for his maladies.

Plaintiff had a long history of suffering from gastroesophageal reflux disease (GERD). His treating providers thought his symptoms were caused by diabetic gastroparesis. There are few treatments available for gastroparesis and Plaintiff was treated with the drug known as Metoclopramide.

Kersten began prescribing Metoclopramide for Plaintiff in 2001. He was prescribed this medication during three different periods from 2001 to 2008: May 2001 to June 2002; May 2003 to January 2005; and November 2007 to May 2008.

In 2009, Holtshouser developed involuntary movements of his tongue and these symptoms were diagnosed as tardive dyskinesia, which is an involuntary, repetitive movement disorder.

Plaintiff brought this action against the VA, alleging that his use of Metoclopramide caused his tardive dyskenesia, and also aggravated his Parkinson's disease. Plaintiff's contention is that the VA was negligent in exceeding the duration recommendations for prescribing the medication. The Complaint includes claims of negligence directed at his primary care provider, as well as claims of negligence directed at the VA pharmacy. The Motion for Partial

Summary Judgment only addresses the issue of the alleged negligence of Plaintiff's primary care provider.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

## ANALYSIS

### 1. What is the Standard of Care to be Applied?

In Montana, the threshold obligation of a plaintiff in a medical malpractice case is twofold: first, evidence must be presented to establish the standard of professional care in the type of case involved; second, it must be shown that the doctor negligently departed from this recognized standard in his treatment of the plaintiff. *Gilkey v. Schweitzer,* 983 P.2d 869, 871 (Mont. 1999). This is typically established through expert testimony because the conduct complained of is usually not readily ascertainable by a layman. *See Montana Deaconess Hosp. v. Gratton* (1976), 169 Mont. 185, 189, 545 P.2d 670, 672. The Montana Supreme Court has repeatedly recognized that a plaintiff's failure to provide this expert testimony "is fatal to the plaintiff's claim." *Beehler v. Eastern Radiological Associates, P.C.,* 367 Mont. 21 (2012), citing *Griffin v. Moseley,* 2010 MT 132, ¶ 31, 356 Mont. 393, 234 P.3d 869 (citing *Gratton,* 169 Mont. at 189).

In *Chapel v. Allison*, 785 P.2d 204, 210 (Mont. 1990), the Montana Supreme Court held: a non-board-certified general practitioner is held to the standard of care of a "reasonably competent general practitioner acting in the same or similar community in the United States in the same or similar circumstances." *See Shilkret v. Annapolis Emergency Hospital Association* (1975), 276 Md. 187, 349 A.2d 245. "Similar circumstances" permits consideration by the trier of fact of legitimate local factors affecting the ordinary standard of care including the knowledge and experience of the general practitioner, commensurate with the skill of other competent physicians of similar training and experience, with respect to the type of illness or injury he confronts and the resources, facilities and options available to him at the time. *Chapel* at 210.

The Montana Supreme Court has deviated from the locality rule in *Asasheim v. Humberger*, 215 Mont. 127 (1985). The Court found that with a nationally board certified orthopedic surgeon, the better standard was, "the skill and learning possessed by other doctors in good standing, practicing in the same specialty and who hold the same national board certification." *Id.* "The locality rule was an outgrowth of disparity in the quality of community medical practice. To the credit of the medical profession, including its excellent training and certification program, the disparity has largely been eliminated." *Id.* The

circumstances in this case are easily distinguishable from *Asaheim v. Humberger*. This case does not involve a nationally board certified orthopedic surgeon, but instead involves a board certified nurse practitioner.

It would not be appropriate to hold a nurse practitioner in one state to the same standard of care as that of a nurse practitioner in another state, simply for the reason that the type of treatment nurse practitioners provide varies from state to state. A nurse practitioner in Montana must pass a standardized national test before being licensed. However, the scope of their practice is different from other parts of the country. In Montana, a nurse practitioner is regulated by the Montana Board of Nursing, and can practice without the supervision of a physician. *Kersten Depo.* 12:12-20. The same cannot be said for other parts of the United States. The American Association of Nurse Practitioners (AANP) has a website which provides the licensure and regulatory requirements for nurse practitioners in all 50 states.[1] Some states require nurse practitioners to pass a national standardized test, some do not. Some states permit an autonomous practice, but some states require collaboration with a physician or direct physician supervision or delegation.

---

[1] http://www.aanp.org/legislation-regulation/state-practice-environment

Similarly, while the scope of practice of a nurse practitioner may overlap with that of a physician, a nurse practitioner may not be as knowledgeable or skilled as a physician because of the advanced education and training of a physician.

The Montana Supreme Court has not addressed the application of the *Chapel* rule to a nurse practitioner, but for purposes of this case, I intend to adopt the *Chapel* rule and modify it slightly so that it is applicable for nurse practitioners, i.e., the standard of care of a reasonably competent nurse practitioner acting in the same or similar community in the United States in the same or similar circumstances.

### 2. Plaintiff's Experts

The Montana legislature has passed a statute which specifies the requirements for testimony on negligence and standard of care under Montana law, which provides as follows:

> (1) A person may not testify as an expert witness on issues relating to negligence and standards of care and practice in an action on a malpractice claim, as defined in 27-6-103, for or against a health care provider, as defined in 27-6-103, unless the person:
>
> > (a) is licensed as a health care provider in at least one state and routinely treats or has routinely treated within the previous 5 years the diagnosis or condition or

provides the type of treatment that is the subject matter of the malpractice claim or is or was within the previous 5 years an instructor of students in an accredited health professional school or accredited residency or clinical research program relating to the diagnosis or condition or the type of treatment that is the subject matter of the malpractice claim; and

(b) shows by competent evidence that, as a result of education, training, knowledge, and experience in the evaluation, diagnosis, or treatment of the disease or injury that is the subject matter of the malpractice claim against the health care provider, the person is thoroughly familiar with the standards of care and practice as they related to the act or omission that is the subject matter of the malpractice claim on the date of the incident upon which the malpractice claim is based.

(2) If the malpractice claim involves treatment that is recommended or provided by a physician as defined in 37-3-102, a person may not testify as an expert witness with respect to issues of negligence or standards of care and practice concerning the treatment unless the person is also a physician.

(3) A person qualified as an expert in one medical specialty or subspecialty is not qualified to testify with respect to a malpractice claim against a health care provider in another medical specialty or subspecialty unless there is a showing that the standards of care and practice in the two specialty or subspecialty fields are substantially similar. This subsection (3) does not apply if the subject matter of the malpractice claim against the health care provider is unrelated to the relevant specialty or subspecialty.

Mont. Code Ann. § 26-2-601.

Plaintiff's first expert is a psychiatrist by the name of Peter Breggin, M.D. Dr. Breggin is licensed to practice medicine in the state of New York, where he treats patients suffering from the adverse side effects of medications in his clinical pharmacology practice. *Plaintiff's Statement of Genuine Issues (SGI)* ¶¶ *11, 17.* Dr. Breggin has authored medical literature setting guidelines for prescriptions and dispensing of medication. *Plaintiff's SGI* ¶ *21*. Dr. Breggin has investigated cases dealing with adverse drug effects from Metoclopramide and treats patients in his clinical pharmacology practice for movement disorders, such as tardive dyskinesia and Parkinson's disease. *Plaintiff's SGI* ¶ *65*. Dr. Breggin has no training or experience in primary care or geriatric medicine. Dr. Breggin is not board certified in any specialty. All of Dr. Breggin's training and experience are in the area of psychiatry. *Defendant's Statement of Undisputed Facts (SOUF)* ¶¶ *11-12.* Dr. Breggin also has no experience working with nurse practitioners. He has no knowledge of the training received by nurse practitioners in Montana, nor does he have an understanding of the scope of practice for a nurse practitioner in Montana. *Defendant's SOUF* ¶ *15.* Dr. Breggin is unfamiliar with the scope of practice at the VA Outpatient clinic in Bozemen. *Defendant's SOUF* ¶ *16.*

Furthermore, Dr. Breggin is unfamiliar with the care and treatment of the condition for which Plaintiff was being treated. He does not treat patients with

GERD; he does not prescribe medications for the treatment of GERD; and he does not hold himself out as an expert in the treatment of GERD. *Defendant's SOUF ¶ 25.* He also does not treat patients with diabetic gastroparesis. *Defendant's SOUF ¶ 23.* He does not know what medications are available for the treatment of the condition; he only knows that available treatments are limited. *Defendant's SOUF ¶¶ 6, 24.* Dr. Breggin is aware that Metoclopramide was one of the medications available for the treatment of gastroparesis, but he does not know how it was commonly prescribed for treatment of the conditions from 2001 to 2008. *Defendant's SOUF ¶ 23.* He only has knowledge that some physicians were prescribing the medication, and that they were prescribing for periods longer than recommended by the manufacturer's label. *Defendant's SOUF ¶ 23.* Breggin's proposed testimony regarding the standard of care is based on what he personally considers to be the minimum knowledge necessary. *Defendant's SOUF ¶ 21.* His standard of care does not take into consideration similarity of location or circumstances, or whether the treatment provider is a nurse practitioner or a physician. *Defendant's SOUF ¶ 21-22.*

Plaintiff's second expert is Benzi Kluger, M.D. Dr. Kluger is licensed to practice in Colorado and has a clinical neurology practice treating patients suffering from movement disorders one day a week. *Defendant's SOUF ¶ 28.* Dr.

Kluger is an associate professor of neurology at the University of Colorado. His clinical practice involves patients suffering from medication induced movement disorders, including those caused by Metoclopramide. *Plaintiff's SGI ¶¶ 27, 28, and 29.*

With the exception of a three month rotation in an outpatient clinic during his internship, Dr. Kluger does not have any experience in primary care. *Defendant's SOUF ¶ 30.* While he does treat elderly patients with Parkinson's disease and other movement disorders, he does not provide treatment as a primary care geriatrician. *Defendant's SOUF ¶ 29.* Dr. Kluger does not treat patients for GERD and does not prescribe medication for that condition. *Defendant's SOUF ¶ 31.* Dr. Kluger does not know whether any available GERD medications have restrictions or recommendations for duration of use. *Defendant's SOUF ¶ 31.*

Dr. Kluger does not treat patients with diabetes, nor does he treat patients with diabetic gastroparesis. *Defendant's SOUF ¶ 32.* He does not know whether there are medications that are effective for the treatment of the condition, and he does not have any knowledge regarding how Metoclopramide was being prescribed by primary care physicians for the treatment of gastroparesis during 2001-2008. *Defendant's SOUF ¶¶ 32, 33.*

Dr. Kluger is not familiar with the scope of practice for nurse practitioners in Montana. Defendant's SOUF ¶ 37. His experience with primary care nurse practitioners is limited to time spent working with a nurse practitioner while a medical student. *Defendant's SOUF ¶ 37.* Dr. Kluger does not know what resources are available at the Bozeman VA Clinic. *Defendant's SOUF ¶ 37.* Dr. Kluger's standard of care does not take into consideration similarity of location or circumstances, or whether the treatment provider is a nurse practitioner or a physician. *Defendant's SOUF ¶ 38.*

Plaintiff argues that these two medical doctors are experts in the safe administration of medication and drug-related movement disorders and they are expected to testify that the standard of care required Defendant to apprise Plaintiff of the risks of Metoclopramide and obtain informed consent, monitor Plaintiff for adverse reactions, and follow reasonable dosing guidelines. Plaintiff relies heavily on *Beehler v. Eastern Radiological Associates, P.C.,* 367 Mont. 21 (2012), to support an argument that the treatment that is the subject matter of this claim is Plaintiff's movement disorder, not the treatment of his gastroparesis or GERD with Metoclopramide. In this case, the relevant treatment which is the subject matter of the malpractice claim is the VA's treatment of Plaintiff's gastroparesis or

GERD with Metoclopramide, not his movement disorder. Plaintiff's reliance on *Beehler* is misplaced.

It is apparent to the Court that none of Plaintiff's proposed experts have any experience in the practice of primary care or geriatric medicine. None of them have ever treated a patient like the Plaintiff in a location or setting similar to Bozeman's VA Clinic. Most importantly, Plaintiff's proposed experts have no knowledge as to the training and scope of practice of a nurse practitioner in Montana. None of them have any experience in treating GERD, gastroparesis, or managing the complex primary care of an elderly, infirm patient.

The testimony of Plaintiff's standard of care experts is barred by the provisions of Mont. Code Ann. § 26-2-601. Plaintiff's experts do not treat the condition or provide the type of treatment that is the subject of this malpractice claim, as required by Mont. Code Ann. § 26-2-601(1)(a). Plaintiff's experts are not familiar with the standards of care and practice that is the subject matter of the claim, as required by Mont. Code Ann. § 26-2-601(1)(b). There is no showing that the standards of care and practice in the specialty or subspecialty fields are substantially similar, as required by Mont. Code Ann. § 26-2-601(3). The treatment of GERD and gastroparesis and the prescription of Metoclopramide for the treatment of the condition are not within the scope of practice for a psychiatrist

or neurologist. Plaintiff's experts are not qualified to testify as to the standard of care in treating patients like Plaintiff for the condition which he was receiving treatment.

### 3. Defendant's Testimony and the Standard of Care

Plaintiff argues that the sworn testimony of Kersten establishes the standard of care and a deviation therefrom.

The Montana Supreme Court has recognized that third party expert testimony is unnecessary if a defendant doctor's own testimony establishes the standard of care and departure from it. *See Hunter v. Missoula Cmty. Hospital*, 750 P.2d 106 (1988); *Hill v. Squibb and Sons, E.R.*, 592 P.2d 1383 (1979).

With respect to the duty to advise of risks, Kersten agreed with a statement that "[w]hen a chosen therapy has serious risks, those risks must be thoroughly explained to the patient so that the patient can be involved with the treatment plan." This statement is subject to interpretation. It does not establish that a patient should be advised of all risks of medication, no matter how remote. It also does not establish that the risk of developing a movement disorder from the use of Metoclopramide was sufficiently serious or likely to warrant special counseling.

With respect to monitoring Plaintiff for a movement disorder, Defendant asserts that Plaintiff was monitored for movement disorders prior to the time he was taken off of Metoclopramide in 2008. *Kersten Dep.* 44:12-23.

With respect to an alleged admission that Kersten said she would never use Metoclopramide for longer than 12 weeks again, Kersten acknowledged that there was a recommendation that the medication not be used for longer than 12 weeks, but also made clear that this was a recommendation and not a restriction on the use of the medication. *Kersten Dep.* 256:17-20. Kersten was not aware of any duration restrictions on prescribing Metoclopramide prior to 2007. *Kersten Dep.* 257:2-10.

Kersten also testified at her deposition that, even with the benefit of hindsight, she would not have prescribed the medication different. *Kersten Dep.* 255:9-11. She also stated that her current practice of not prescribing Metoclopramide beyond 12 weeks is to avoid being dragged into another lawsuit, not because of medical considerations.

The standard of care cannot be established from Kersten's testimony. The personal practices of a health care provider, without knowledge of the general custom and practice among the profession, is not sufficient to establish a general

standard of care. *Collins v. Itoh*, 503 P.2d 36, 41 (Mont. 1972); *Montana Deaconess Hosp. v. Gratton*, 545 P.2d 670, 673 (Mont. 1976).

## CONCLUSION

Plaintiff cannot satisfy the threshold proof requirements to sustain a medical malpractice claim. He cannot establish the applicable standard of care and breach thereof by the nurse practitioner who was his primary care provider. Defendant's Motion for Partial Summary Judgment is **GRANTED**.

DATED this ___ day of April, 2013.

RICHARD F. CEBULL
SENIOR U.S. DISTRICT COURT JUDGE